# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DALE REDIG,**

   Plaintiff,

   v.               Case No. 13-C-155

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration**

   Defendant.

# DECISION AND ORDER

This matter is before the Court on Plaintiff Dale Redig's ("Redig") request for judicial review pursuant to 42 U.S.C. § 405(g) of the adverse decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits.

## Background

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that physical and/or mental impairments prevent him from doing not only his previous work, but any other substantial gainful employment that exists in the national economy

considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner has established a five-step sequential analysis. *See* 20 C.F.R. § 404.1520. The Commissioner's evaluation requires consideration of the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals an impairment listed by the Commissioner, *see* 20 C.F.R. § 404, Subpart P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy. *See Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560(c)(2).

Redig filed an application for disability insurance benefits on October 15, 2008, claiming disability due to Crohn's disease,[1] back pain following back surgery,

---

[1] Crohn's disease is an autoimmune disorder that causes chronic inflammation of the gastrointestinal tract. Symptoms, which include crampy abdominal pain, fever, fatigue, loss of appetite, and persistent diarrhea, can be mild to severe, and can come and go with periods of flare-ups. *Crohn's Disease,* PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001295/ (last visited Mar. 27, 2014).

- 2 -

and other impairments. Redig's application was denied initially and upon reconsideration.

At Redig's request, an administrative hearing was held on July 20, 2012, before administrative law judge ("ALJ") Patrick H. Morrison. Redig, represented by counsel, appeared and testified. At the ALJ's request, vocational expert Robert Neuman also appeared and testified. By an August 21, 2012, decision the ALJ denied Redig's claims. (Tr. 26.)

The ALJ found that Redig had not engaged in substantial gainful activity since October 15, 2008, and that he had the severe impairments of Crohn's disease, status post a September 2011 exploratory lapratomy[2] and ileocolonic resection;[3] and a low back disorder, status post an October 2005 lumbar laminectomy[4] and fusion. The ALJ also determined that Redig did not have an impairment or combination of impairments that meets or medically equals an impairment listed by the Commissioner.

---

[2] An exploratory laparotomy involves an abdominal incision to examine the abdominal organs. The size and location of the surgical cut depends on the specific health concern. http://www.nlm.nih.gov/medlineplus/ency/article/002928.htm (lasted visited March 31, 2014).

[3] An ileocolonic resection is surgery to remove the terminal ileum, the last part of the small intestine and first part of the colon. It is usually performed for conditions such as Crohn's disease. http://www.birminghambowelclinic.co.uk/treatments-ileocolic-resection (last visited March 31, 2014).

[4] A lumbar laminectomy is surgery to remove the lamina — the back part of the vertebra that covers the spinal canal. Also known as decompression surgery, laminectomy enlarges the spinal canal to relieve pressure on the spinal cord or nerves. http://www.mayoclinic.org/tests-procedures/laminectomy/basics/definition/prc-20009521 (last visited March 31, 2014).

The ALJ further found that Redig had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §404.1567(b), except that he was limited to work which involved no more than occasional bending, kneeling, crouching, crawling, and stooping. The ALJ found that with such an RFC Redig was unable to perform his past relevant work. However, using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, as a framework for decision-making, together with the vocational expert's testimony, the ALJ found that despite the reduction in Redig's ability to perform all or substantially all the requirements of light work, there are a significant number of unskilled light jobs in the national economy that a person of Redig's age, education, work experience, and RFC could perform. The ALJ listed jobs of office clerk, production inspector, and information inspector.

Redig requested review of the ALJ's decision by the Appeals Council. That request was denied on December 27, 2012, leaving the ALJ's decision as the final decision of the Commissioner. Redig commenced this action on February 13, 2013. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## Analysis

The issues raised by Redig on appeal relate to the ALJ's credibility determination and the weight that the ALJ afforded to the opinions of Redig's treating physicians and the state agency doctors.

*Credibility*

With respect to the ALJ's credibility determination, Redig maintains that the ALJ improperly relied upon boilerplate language; his analysis of the severity of Redig's pain and other symptoms did not comply with Social Security Ruling ("SSR") 96-7p; he erred because he did not state the extent to which he found Redig credible, contrary to *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010); and *Parker v. Astrue,* 597 F.3d 920, 921-22 (7th Cir. 2010); and he did not properly evaluate Redig's inability to obtain medical care due to his poverty, as required by SSR 96-7p.

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); see 20 C.F.R. § 404.1529(c); SSR 96–7p.[5] The ALJ's decision "must contain 'specific reasons' for a credibility finding;

---

[5] Social Security Ruling 96-7p requires that the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

Continued on next page

the ALJ may not simply 'recite the factors that are described in the regulations.'" *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002) (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.* The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons, supported by substantial evidence, for that finding. *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). In rendering his decision, the ALJ must "build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012) (citation omitted).

Here, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting

---

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Rulings are directives that an ALJ is required to follow. *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000).

effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 22). *Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012), strenuously criticized nearly identical language. However, that language is not the death knell for all credibility determinations − where boilerplate language is accompanied by additional reasons, a credibility determination need not necessarily be disturbed if it is otherwise adequate. *Pepper v. Colvin,* 712 F.3d 351, 366 (7th Cir. 2013); *Shideler*, 688 F.3d at 311-12. Additionally, "an ALJ's credibility findings need not specify which statements were not credible." *Shideler*, 688 F.3d at 312.

The Court concludes that the ALJ explained the reasons for his credibility determination in sufficient detail. Not only did the ALJ explain those reasons in his decision, but the determination is based on information obtained by the ALJ during the course of the administrative hearing when he questioned Redig extensively regarding the factors identified in SSR 96-7p. (Tr. 38-63.) This pursuit of information relevant to the credibility determination stands in stark contrast to the often perfunctory approach by ALJs and is worthy of replication by other ALJs. After all, hearings to determine whether claimants are entitled to social security benefits are not adversarial proceedings. *See Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997).

In his decision, the ALJ considered Redig's subjective statements, including his testimony as to the severity of his symptoms; the objective medical evidence, including diagnostic exam findings; the opinions of the record medical sources;

Redig's use of medications and resulting side effects; and his activities of daily living. (Tr. 21-24.)

The ALJ noted that Redig lives independently in a mobile home, has no income, and has looked for work. (Tr. 21, 23.) He is able to deer hunt with a cross bow and rifle and plays darts once a week. (Tr. 23.) The ALJ also reviewed Redig's activities, which include cooking simple meals, doing dishes and small loads of laundry, and going grocery shopping. (Tr. 22.) He noted that Redig engaged in these and other daily activities, "albeit at a slower pace." (Tr. 23.)

The ALJ also acknowledged Redig's claim that his Crohn's disease prevents him from working because two to three days a week he has stomach pain and has to use the restroom up to 15 times a day. (Tr. 21.) He noted that Redig testified he has back pain because his 2005 back surgery never healed properly, and that his back pain begins slowly and radiates through his buttocks and into his right lower extremity. (Tr. 22.) Additionally, he stated that Redig's right knee and ankle swell. (*Id.*)[6] Redig uses medication, alternates his position, and limits his walking. (*Id.*)

The ALJ noted that despite his allegedly disabling pain and frequent Crohn's disease exacerbations, Redig had almost no medical care for such symptoms and the record established that they are well-controlled with medication. (Tr. 23.) The ALJ

---

[6] The ALJ stated that Redig's right foot and knee swell when he is off his feet; however, Redig testified that putting his leg above his heart helps the swelling go down. (Tr. 54.) Thus, it is likely the ALJ got it backwards; Redig's foot and knee swell when he is on his feet.

could reasonably rely upon the fact that Redig stopped working in 2008 because his employer relocated, not because of physical impairments. (Tr. 21, 23.) The ALJ also summarized the medical record regarding Redig's Crohn's disease which was diagnosed in February 2007 (Tr. 22) and his back condition which dated from 2005. (Tr. 23.)

Redig indicates that the ALJ did not adequately consider Redig's poverty as a factor in his inability to obtain medical care. The ALJ did note that Redig lost his health insurance and was unable to continue with his medication regimen and that "other than the fall 2011 exacerbation when he lacked medication," Redig's Crohn's disease was under acceptable medical control with treatment (Tr. 22.) Additionally, the ALJ noted that in May 2011, when Redig saw his treating gastroenterologist, Dr. Jeffery W. Schenk ("Schenk"), M.D., due to two weeks of lower quadrant pain, Schenk was able to assist Redig in obtaining his Crohn's medication at no cost. (*Id*.) The ALJ gave adequate consideration to Redig's financial limitations in assessing his credibility.

The ALJ's credibility assessment need not be "flawless;" it passes muster as long as it is not "patently wrong." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009). In Redig's case the ALJ adequately examined the evidence, considered the appropriate factors, and built the required logical bridge from the evidence to his conclusions about Redig's credibility. *See Castile v. Astrue,* 617 F.3d 923, 929 (7th Cir. 2010).

*Medical Evidence*

A decision denying benefits need not discuss every piece of evidence; however, when an ALJ fails to support his conclusions adequately remand is appropriate. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Court's review is limited to the reasons articulated by the ALJ in the written decision. *Id.*

A treating physician's opinion that is consistent with the record is generally entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection. 20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence. *Jelinek,* 662 F.3d at 811. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craft*, 539 F.3d at 673 (citation omitted). An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice. *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996).

Here, the ALJ explained that he relied on the evidence showing Redig had

severe impairments of Crohn's disease, status post a September 2011 exploratory lapratomy and ileocolonic resection; and a low back disorder, status post an October 2005 lumbar laminectomy and fusion. (Tr. 20). These impairments caused limitations, restricting Redig to a range of light work that required no more than occasional bending, kneeling, crouching, crawling, and stooping. (Tr. 21.) The ALJ reached this RFC finding by weighing the record evidence as a whole, including the opinions and findings of the treating, examining, and non-examining physicians, who reviewed Redig's file and completed a RFC assessment form. (Tr. 21-24.)

Redig contends that the ALJ acted improperly by giving substantial weight to the portion of a March 18, 2009, RFC questionnaire (Ex. 4F) (Tr. 264-65) from treating orthopedic/spinal surgeon Richard K. Karr ("Karr"), M.D. that Redig could perform "light work with postural limitations limited to occasional [bending, squatting and climbing]" (Tr. 24) because it was supported by the record, while giving no weight to the doctor's assessment that Redig would have difficulty reaching above shoulder level. (*Id.*)

Redig overstates Karr's opinion regarding reaching. Karr reported that Redig could "frequently" reach above shoulder level. (Tr. 264.) In any event, the ALJ could properly dismiss that portion of Karr's opinion (Tr. 24) addressing the purported limitation on the ground that it was inconsistent with the September 2003 report issued just after Redig's shoulder procedure which imposed no limitations (Tr. 230), and the fact that Redig did not claim shoulder limitations during the May 24, 2011,

- 11 -

consultative examination conducted by Dr. Daniel Jankins ("Jankins"), M.D. (Tr. 291-93.) A treating source's opinion as to the nature and severity of a claimant's impairments is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ could properly discount the reaching above shoulder level limitation.

Redig also claims that the ALJ did not include the September 14, 2006, limitation imposed by Karr of no repetitive bending beyond 35 degrees. Karr actually wrote "no prolonged or repetitive bending beyond 35 degrees." (Tr. 262.) The restriction articulated by the ALJ limiting Redig's RFC to "occasional" bending adequately accommodates this limitation. Doing only occasional bending by definition forecloses repetitive bending at any degree.

Redig also maintains that the ALJ gave too much weight to the non-examining consultant physicians, questions the validity of their opinions given their respective specialties, and contends that the ALJ gave insufficient consideration to Jankins' opinions.

Doctors Janis Byrd ("Byrd"), M.D., and Syd Foster ("Foster"), D.O, reviewed the record and determined that Redig was capable of light exertional level activity, with some postural limitations found by Foster. (Tr. 24, 296-303, 367-74.) The ALJ reasonably concluded that because Foster's opinion, the most recent of the two, about Redig's physical capabilities was supported by the record it was entitled to substantial

weight (Tr. 24, 367-74). Social Security Ruling 96-6p provides that:

> 1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council level of administrative review.
>
> 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

State agency physicians and psychologists are "highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation." See 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p; *see also Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir. 1993) (agency may rely on conclusions of state agency physicians). The ALJ could properly rely on Foster's RFC assessment.

Redig also attempts to discredit the opinions of Byrd and Foster relying on evidence not presented to the ALJ or the Appeals Council − a declaration with attached curricula vitae of the physicians, indicating that Byrd's specialty is family practice focusing in gynecology and Foster is a family practice osteopath. (Pl.'s Br. 22, Angermeier Decl., Exs. 1-2.) (ECF Nos. 11, 12, 12-1, 12-2.)

This proffered evidence cannot be considered by this Court in its substantial evidence review. *Eads v. Sec'y of the Dep't of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir. 1993). It could only be considered for purposes of a sentence six remand − a procedure with stringent criteria requiring that the movant establish the

evidence is new and material and show "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). *See also, Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991). Redig's conclusory statements that the evidence meets the statutory criteria fall short. (*See* Pl.'s Br. 22 n.6, Pl's Reply Br. 9-10.) (ECF Nos. 11 & 18.)

Redig also contends that the ALJ erred in evaluating Jankins' report. (Pl.'s Br. 22-24; Tr. 291-95.) Specifically, Redig contends that the ALJ failed to include "walking limitations, struggling to get out of a chair, and right ankle swelling, which Jankins found to be 'limiting'" (Pl.'s Br. 24.)

Redig's description of Jankins' report is skewed. Jankins did not impose a walking limitation. Rather, Redig estimated that he could walk five to six blocks. (Tr. 291.) Jankins also reported "[h]e struggled to get out of a chair without the use of his hands but was able to get on and off of the exam table under his own power." (Tr. 293.) Furthermore, under the "impression" section of his report, Jankins stated that Redig's

> biggest issue besides the back pain and radicular component may be this new right lower extremity and most notably right ankle swelling which may be as a result of his Crohn disease and then an associated autoimmune arthritis. This is a new issue that is limiting him as well.

(*Id.*) The ALJ did not include an extensive discussion of Jankins' report; however, the findings are also not what Redig claims them to be.

Having reviewed the entire record, Redig's contentions, and the ALJ's

decision, the Court concludes that the decision must be upheld as it is adequately articulated, supported by substantial evidence, and contains no errors of law.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Redig's action for judicial review reversing or remanding the Commissioner's final determination is **DENIED**. The Commissioner' final decision dated August 21, 2012, finding Redig is not disabled is **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g); and

The Clerk of Court is **DIRECTED TO ENTER** judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2014.

                                            **BY THE COURT:**

                                            */s/ Rudolph T. Randa*
                                            **HON. RUDOLPH T. RANDA**
                                            **U.S. District Judge**